UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| SHARON PRAIGROD, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>ST. MARY'S MEDICAL CENTER, )<br>)<br>Defendant. )<br>) | 3:05-cv-0166-JDT-WGH |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 29)**[1]

This matter comes before the court on Defendant's Motion for Summary Judgment.[2] Plaintiff Sharon Praigrod filed this lawsuit in United State District Court alleging claims under the Family and Medical Leave Act ("FMLA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Americans with Disability Act ("ADA"). Plaintiff was a nurse at St. Mary's Medical Center in Evansville, Indiana, until she was unable to return to work after utilizing all her FMLA leave. Pursuant to St. Mary's policy, she was replaced and given thirty days upon returning to work to obtain a transfer to another unit with an opening. When Plaintiff was unable to get a transfer, St. Mary's discharged her.

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

[2] Plaintiff styled all of her briefs as in opposition to Defendant's *Partial* Motion for Summary Judgment because she claimed that Defendant was not asking the court to enter judgment on all Plaintiff's claims. The court does not wish to engage in a semantics debate. It is clear that Defendant has attempted to present arguments sufficient for the court to enter judgment on all of Plaintiffs claims. Regardless of the merits of each of St. Mary's arguments, the court will refer to the Defendant's motion as one for summary judgment.

Plaintiff does not argue that she was discriminated against in her termination; rather, she focuses on the fact that St. Mary's did not give her any of the twenty-three posts for which she applied for transfer.

I.      **BACKGROUND**

Before her termination, Sharon Praigrod had fourteen years of continuous service with St. Mary's and another hospital St. Mary's purchased, Welborn Baptist Hospital. Both are located in Evansville. Plaintiff held the same job, a night staff nurse on the Orthopaedics/Neurology floor, until she took FMLA leave in April 2004.

In 2002, Plaintiff received approval for intermittent leave due to "irritable bowel syndrome," which she also refers to in her briefs as "irritable bowel dumping syndrome." This caused her to have uncontrollable mass diarrhea which could last anywhere from a few hours to a few days. She claims to be unable to work during these spells.

Throughout 2003 and 2004, Plaintiff took several official leaves of absence. She took time off in 2003 to care for her sick mother, who then passed away on April 19, 2003. Plaintiff is Jewish and normally the Jewish faith calls for an immediate burial of the deceased followed by seven days of mourning by the immediate family, called sitting shiva. Because her mother died during the Jewish festival of Passover, however, the mourning period could not begin until after Passover ended. According to Plaintiff, her mourning would not end until approximately two weeks after her mother's death. During this mourning period, immediate family members cease their normal lives, and cannot work.

Plaintiff talked with Suzanne Hilbert, St. Mary's Human Resource Manager, and Mary Moll, Plaintiff's supervisor, about her mourning obligations over the phone on April 30, 2003.  According to Plaintiff, Moll accused Plaintiff of lying about her obligations.  Moll and Hilbert said they would call a local Rabbi to confirm her obligations.  They informed her that she would be fired if she did not return to work by Thursday.  Moll called Plaintiff's religion "stupid."[3]  Plaintiff returned to work rather than lose her job.

Plaintiff was issued a disciplinary citation on June 25, 2003, for excessive absenteeism.  Plaintiff contends that some of these days listed on her citation were a result of caring for her mother or her own trip to the emergency room.  In the citation, she was told to review the attendance guidelines and improve attendance.  However, her attendance did not improve.  In 2003, Plaintiff was absent on over one-fourth of her scheduled work days.  Before she was terminated in 2004, Plaintiff was absent on over half of her scheduled work days.[4]

Plaintiff took a leave of absence in April 2004 in order to have her gall bladder removed.  She ran out of FMLA leave at some point in May 2004, but could not return to work until May 31, 2004.  Pursuant to St. Mary's leave of absence policy, Plaintiff's position was filled.  However, she was also given thirty days to apply for transfers to

---

[3] Moll and St. Mary's deny this was said.  Indeed, no mention of the comment is made in Plaintiff's handwritten notes of the conversation; however, the facts are taken in a light most favorable to the non-moving party.

[4] Although Plaintiffs and Defendants seem to agree on this number, neither party breaks it down for the court in terms of number of days for her mother's illness, her illness, mourning time, or FMLA leave.

other departments with openings. Although Plaintiff was able to get a temporary position in the Child Health Center, she was not able to get a permanent transfer.

Plaintiff applied for twenty-three separate positions in the thirty day-period.[5] She received only two interviews, despite her fourteen years of experience with the hospital. The record is sparse as to why she did not receive more than two interviews or who got the jobs instead. However, Plaintiff wrote in her EEOC complaint that some of the positions she applied for were still open as of September 23, 2004.

Because she did not receive a transfer within thirty days, Plaintiff's employment was terminated July 8, 2004. Plaintiff then applied for roughly twenty-four more positions as an outside applicant. She did not receive any interviews. At this point, Plaintiff filed a complaint with the EEOC alleging discrimination based on religion and disability. She mentioned that Moll said she lied about her mourning obligations, but not that she called her religion "stupid." She also mentioned that she did not receive a transfer, but omitted that she had not received any of the jobs she had applied for post-termination. After filing her EEOC complaint, she applied for roughly an additional seventeen positions.

Plaintiff filed this suit in federal court on September 19, 2005, alleging claims under the FMLA for interference and retaliation, under the ADA for discrimination, and under Title VII for discrimination on the basis of religion. The summary judgment

---

[5] Defendant claims that it was twenty-two. From the evidence presented by the parties, the court cannot definitively say; therefore, the court will take the facts in a light most favorable to Plaintiff as non-movant, as it must.

process has been greatly extended in this case. In the Order on the Case Management Plan (Doc. No. 13), the deadline for filing dispositive motions was set for May 19, 2006. On May 18, 2006, Defendant asked for an extension until July 20 to file a motion for summary judgment. (Doc. No. 20.) On July 17, 2006, Defendant made an additional request for an extension of time to file a motion for summary judgment until September 20, 2006. (Doc. No. 23.) Defendant filed its Motion for Summary Judgment on September 20, 2006. Plaintiff then filed a motion on October 23, 2006 requesting until November 13, 2006, to submit its response brief. (Doc. No. 38.) On November 27, 2006, Defendant filed its third request for an extension, this time requesting until December 20, 2006, to file its reply brief. (Doc. No. 45.) Defendant filed its reply on that date and Plaintiff filed a surreply on January 4, 2007.

## II.   DISCUSSION

Employment discrimination claims receive no special standard on summary judgment; however, because intent and credibility are usually key issues in employment discrimination claims, summary judgment is many times not appropriate. *See Alexander v. Wis. Dep't of Health & Family Servs.*, 263 F.3d 673, 681 (7th Cir. 2001). Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the

nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Plaintiff argues a couple of different theories that could lead to recovery under the three statutes listed in her complaint. First, Plaintiff claims that each instance where she was not given a transfer was in retaliation for her taking FMLA leave in violation of 29 U.S.C. § 2615(a)(2).[6] Second, Plaintiff claims that each instance where she was not given a transfer was disparate treatment based on her irritable bowel syndrome in violation of the ADA. Finally, Plaintiff claims that each instance where she was not given a transfer was disparate treatment based on her Jewish faith in violation of Title VII. In all three cases, Plaintiff seeks to prove discriminatory intent through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[7]

In her surreply, Plaintiff argues that some of St. Mary's arguments should not be considered because they were not raised until the reply. Therefore, the court must first determine which arguments are properly before it.

### A. Preliminary Matters

---

[6] Plaintiff has abandoned her substantive FMLA claim. (Pl.'s Br. 3.)

[7] The court assumes some familiarity with the *McDonnell Douglas* burden-shifting framework. To summarize the framework: Plaintiff must first make a prima facie case of discrimination. If she can, then the burden shifts to St. Mary's to proffer a legitimate, nondiscriminatory reason for the adverse employment action. If St. Mary's cannot do this, then Plaintiff wins on summary judgment; if St. Mary's can do this, then the burden shifts again to Plaintiff to show that the proffered reason is merely pretext. *Timmons v. General Motors Corp.* 469 F.3d 1122, 1126 (7th Cir. 2006).

The Seventh Circuit is clear that arguments on appeal must be raised in the opening brief. Failure to wait until a reply brief results in a waiver of those arguments. *See Marie O. v.* Edgar, 131 F.3d 610, 614 n.7 (7th Cir. 1997). In *Commonwealth Edison Co. v. U.S. Nuclear Regulatory Commission*, 830 F.2d 610, 621 n.7 (7th Cir. 1987), the Seventh Circuit explained why waiting until a reply brief undermines order and efficiency in the judicial system. The court stated:

> Edison waited until its reply brief to raise this argument. That is too late. Such belated attempts to introduce new issues violate the need of the judicial system for order and efficiency, and they make very difficult, if not impossible, any effective plenary consideration by the court. Such attempts also seek to expand the issues on appeal without effective notice to the opposing party and come at a time when the opposing party has no opportunity to make a written response. We have regularly refused to consider arguments raised for the first time in a reply brief. This case is no exception.

*Id.*

District courts in the Seventh Circuit have analogized from the Seventh Circuit's command that arguments be raised in the opening brief to write that arguments on summary judgment must also be raised in the opening brief. *See County Materials Corp. v. Allan Block Corp.*, 431 F. Supp. 2d 937, 946 (W.D. Wis. 2006) (citing *Marie O*, 131 F.3d at 621 n.7); *Fairley v. Andrews*, 430 F. Supp. 2d 786, 800 n.6 (N.D. Ill. 2006) (citing *Kelso V. Bayer Corp.*, 398 F.3d 640, 643 (7th Cir. 2005)).

This court finds the analogy to appellate briefing to be persuasive. The Seventh Circuit seems to have analogized in a similar way in *Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994) (citing *Gold v. Wolpert*, 876 F.2d 1327, 1331 n.6 (7th Cir.

1989)).  *Cleveland* dealt with an appeal from the Southern District of Indiana where the trial court plaintiffs argued, *inter alia*, that the district court incorrectly struck the plaintiffs' response to the reply brief.  At the time, our local rules did not provide for a surreply.  *Id* at 297.  Plaintiffs argued that the district court abused its discretion in striking their response because it was necessary given that defendants raised new issues in their reply.  The Seventh Circuit said that if that was the case, plaintiffs should have filed their own motion to strike the reply or sought leave to respond to the reply.  *Id.*  In support of this the court cited *Gold v. Wolpert*, 876 F.2d 1327, 1331 n.6 (7th Cir. 1989), which dealt with the impermissibility of raising new arguments and facts in a reply brief on appeal.  From this, the court gathers that the Seventh Circuit endorses a requirement that arguments be raised in an opening brief as opposed to a reply brief on summary judgment.

One of the reasons given for not allowing arguments to be first raised on reply is that the non-movant would not have a chance to respond without leave of the court.  It might be argued that because our local rules now allow for a surreply that there is no need to disregard arguments made in a reply brief.  *See* S.D. Ind. Local R. 56.1(d).  However, a surreply is not allowed all the time under the Local Rules.  Rather, it is only allowed when "in reply, the moving party relies upon evidence not previously cited or objects to the admissibility of the non-moving party's evidence."  *Id.*  The Local Rules are not a license to hold arguments in reserve for reply or to give movants a second crack at "getting it right."  Additionally, the court notes that the deadline for filing

dispositive motions was long past when the reply brief was filed;[8] therefore, St. Mary's cannot claim that the reply brief had the same effect as simply filing a new summary judgment motion.  Therefore, the court will treat those arguments not made until the reply brief as waived and will only address those arguments made in the opening brief.

The court will now summarize the parties' briefs by claim and determine which issues were properly raised.  On Plaintiff's ADA claim, St. Mary's made the same arguments in its original brief as it did in its reply.  St. Mary argued in its original brief that Plaintiff was not a "qualified individual" within the meaning of the ADA because she could not "perform the essential functions of the employment position."  42 U.S.C. § 12111(9).  It further argued that Plaintiff could not meet her prima facie case under *McDonnell Douglas.*  In particular, it argued that she could not show that she was meeting the legitimate performance expectations of her employer or that she could show similarly situated individuals.[9]  St. Mary's also argued that even if Plaintiff could meet her prima facie case, her claim still failed because St. Mary's provided a legitimate, non-discriminatory reason for its actions.  Because all three of these arguments were mentioned in the opening brief, they are properly raised.

On Plaintiff's Title VII claim of religious discrimination, St. Mary's begins its argument in the opening brief by asserting that Plaintiff has no direct proof of

---

[8] Indeed, as mentioned above both sides asked for extensions in submitting briefs for this motion.

[9] St. Mary's only mentioned this argument in one sentence on page 15 of its opening brief.  Plaintiff nowhere acknowledges that St. Mary's raised it in its opening brief.  In the end, it does not matter whether this argument is considered or not because the claim can be decided on another issue.

discrimination. However, it does not question Plaintiff's prima facie case of discrimination for the purposes of the *McDonnell Douglas* framework. Instead, St. Mary's focuses on the fact that it provides a legitimate, nondiscriminatory reason for its refusal to transfer. Plaintiff concedes she cannot present direct evidence of discrimination. Then in its reply brief, St. Mary's for the first time claims that Plaintiff cannot meet her burden to demonstrate similarly situated individuals as required for an prima facie case under the indirect method of proof. For the reasons discussed above, this argument will not be entertained. The court will only consider the argument that St. Mary's provided a legitimate, nondiscriminatory reason for its actions.

Finally, St. Mary's argued that the FMLA claim should fail because (1) St. Mary's did not interfere with or deprive Plaintiff of her FMLA rights and (2) Plaintiff could not show direct evidence of discrimination. In its response, Plaintiff correctly pointed out that it did not necessarily need to demonstrate either of these things if she pursues a retaliation claim based on the indirect method of proof through the burden shifting framework of *McDonnell Douglas*. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). In its reply, St. Mary's conceded that this was the case, but argued that it was still entitled to summary judgment because Plaintiff could not satisfy the requirement under *McDonnell Douglas* that she identify similarly situated individuals. For the reasons mentioned above, this argument will not be considered. St. Mary's original brief did not present an argument that would justify it receiving summary judgment on the FMLA claim; therefore, the motion for summary judgment will be **DENIED** with respect to the FMLA claim.

**B.     ADA**

The ADA prohibits employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  For the purposes of this Motion for Summary Judgment, the parties agree that Plaintiff is disabled; however, St. Mary's challenges whether Plaintiff is a "qualified individual."  The ADA defines a qualified individual as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8). "[P]laintiff bears the burden of proof on the issue of whether he is a 'qualified individual' under the ADA."  *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir. 1998).  This determination is made "as of the time of the employment decision." *Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 563 (7th Cir. 1996).

St. Mary's argues that regular attendance is an essential function of all of the nursing positions for which Plaintiff applied.  Because Plaintiff's attendance was erratic, St. Mary's believes that Plaintiff was unable to perform an essential function of those employment positions, and thus does not qualify for protection under the ADA.  In support of its argument, St. Mary's cites *EEOC v. Yellow Freight System, Inc.*, 253 F.3d 943 (7th Cir. 2001).  In *Yellow Freight System*, the Seventh Circuit upheld summary judgment for an employer finding that the employee was not a "qualified individual"

under the ADA. The court explained that ADA does not protect people with poor work attendance:

> At the outset, let us be clear that our court, and every circuit that has addressed this issue, has held that
>
>> in most instances the ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability. The fact is that in most cases, attendance at the job site is a basic requirement of most jobs.

*Id.* at 948 (quoting *Waggoner v. Olin Corp.*, 169 F.3d 481, 484-85 (7th Cir.1999)).

Both sides concede that regular attendance is an essential function of nursing. Plaintiff argues, however, that "St. Mary's has failed to show that Praigrod's impairment has resulted in absences so excessive as to prevent her from performing her job."[10] (Pl.'s Br. 14.) On the contrary, St. Mary's provided evidence that Praigrod missed over one-fourth of her scheduled work days in 2003 and over half of her scheduled work days in 2004 leading up until her termination. (Hilbert Aff. ¶¶ 4-5.) Plaintiff was given a citation for her excessive absences (Def.'s Ex. B), and Plaintiff admitted to her co-workers that her absences had "put a large strain on my unit." (Def.'s Ex. O).

---

[10] Plaintiff also claims: "It bears noting that Praigrod was not terminated for having a poor attendance record." (Pl.'s Br. 14.) Plaintiff was replaced because she ran out of FMLA leave and was still unable to work. However, it appears that her attendance record played a part in at least one of the decisions not to grant her a transfer, *see infra* note 11. Further, even *if* Plaintiff could prove that every decision was made specifically because of Plaintiff's irritable bowel syndrome, there is no ADA claim. As far as the ADA is concerned, St. Mary's had every right to hold it against Plaintiff that she could not come in to work because there is no accommodation St. Mary's could make so that Plaintiff could perform the essential functions of her employment position—i.e., being at work.

Plaintiff claims that she was discriminated against because of her "irritable bowel dumping syndrome;" however, it is not clear how someone whose uncontrollable mass diarrhea prevents her from going to work could perform the functions of nursing. Even if this were a factor in Plaintiff's not getting a job with any other department, it seems that it is a legitimate concern given that the ADA is not about giving protection to those with chronic absenteeism.

Plaintiff argues that some of the days used for her citation were for FMLA leave. It might also be argued that some of the days used to determine that she cannot perform the functions of her job come from FMLA leave. St. Mary's cites an unpublished opinion, *Payne v. Fairfax County*, No. 1:05cv1446, 2006 WL 3196545 (E.D. Va. Nov. 1, 2006), for the proposition that Plaintiff's FMLA days can be used to show that she cannot fulfill her position's attendance requirement. In *Payne*, the district court entered summary judgment for the defendant. The plaintiff argued that his FMLA time could not be used against him to show that he was not a qualified individual for purposes of the ADA. The district court quoted the C.F.R. to show that FMLA did not modify the ADA. *Id.* at *9 (quoting 29 C.F.R. § 825.702). The court reasoned:

> This regulation is directly on point, as it explicitly provides that the FMLA does not modify the ADA in any form. This leads this Court to conclude that the statutes should be read independently, and if an employee cannot perform the essential function of attendance, even if due to FMLA leave, then the employee is still not a "qualified individual" within the meaning of the ADA. To rule otherwise would be a judicial expansion of a Plaintiff's rights under the ADA and run directly contrary to § 825.702.

*Id.*

The court also cited a passage from the Eighth Circuit which sheds light on the distinction between the ADA and FMLA:

> The rights created under the FMLA are fundamentally different than those granted under the ADA.  One of Congress's purposes in enacting the ADA involved eliminating the discrimination qualified individuals face in their day to day lives.  In contrast, the FMLA was created, in part, because of inadequate job security for employees who have serious health conditions that prevent them from working temporary periods.

*Payne*, 2006 WL 3196545 at *9 n.5 (quoting *Spangler v. Fed. Home Loan Bank of Des Moines*, 278 F.3d 847, 852 (8th Cir. 2002)).  This court finds that passage particularly illuminating.  Plaintiff has no claim under the ADA because her chronic absences mean she is not a qualified individual.  Only the FMLA was meant to protect people in this type of situation.  For this reason Defendant's motion with regard to the ADA claim is **GRANTED**.

    **C.**    **Title VII**

St. Mary's claims that if the *McDonnell Douglas* burden shifting analysis applies, Plaintiff must lose because St. Mary's has articulated a legitimate, nondiscriminatory reason for Plaintiff not receiving each of the positions she applied for.  According to Plaintiff, she applied for twenty-three posts during her thirty day placement period.  St. Mary's claims that three were filled before Plaintiff submitted her transfer request.  St. Mary's then provides legitimate, nondiscriminatory reasons for Plaintiff not getting three

of these positions, reasons that Plaintiff does not contest.[11]  St. Mary's claims that Plaintiff did not get any of the remaining jobs because she did not have experience in these units.

     This reason, however, is not enough to get summary judgment for St. Mary's. One of the ways to show pretext is that "'the reason stated was insufficient to warrant the [allegedly discriminatory action].'" *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001) (quoting *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1133 (7th Cir. 1994) (alternation in original).  A trier of fact could find this reason to be pretext.  There is no indication that experience was a requirement for any of these positions.  Indeed there is evidence that experience was not a requirement for some of these positions.  (*See* Pl.'s Ex. K.)  They appear to have been entry level nursing positions for which Plaintiff was qualified.  There is no evidence that those positions were all filled with individuals with experience in those areas.  If St. Mary's showing were enough, employers could receive summary judgment in every case on this point.  All they would have to say is the employee did not have qualification X, even if X was not a requirement for the job or if the person hired in the job did not have qualification X either.  For this reason, Defendant's motion is **DENIED** with respect to the Title VII claim.

---

[11] The three jobs were 6W/renal, acute renal, and med/surg.  For the 6W/renal post, an internal candidate filled the position.  For the acute renal post, a nurse currently with 6W was given the job and only nurses with experience in 6W or with experience with dialysis patients at another hospital are hired for acute renal.  For the med/surg. post, Plaintiff was not given an interview because of her citation for absenteeism.

There is also a disagreement between Plaintiff and St. Mary's about how many employment decisions are at issue. Plaintiff claims that there are over fifty decisions because she wants to consider both pre-termination transfer requests and post-termination employment applications to be at issue. St. Mary's argues that because the post-termination applications were not mentioned in either the EEOC complaint or the complaint filed in this case that Plaintiff cannot raise them. Regardless of whether Plaintiff is allowed to bring up the post-termination applications, her claim survives. However, because this case will be going to trial, the court will discuss whether the post-termination applications can be used in the Title VII claim.

Judicial proceedings in Title VII cases are limited to the nature of the charges filed with the EEOC. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). EEOC charges are liberally construed so that claims that are "like or reasonably related" to the charges in the EEOC complaint may be brought. *Jenkins v. Blue Cross Mut. Hosp. Ins. Inc.*, 538 F.2d 164, 167 (7th Cir. 1976). But there is a limit to how far an EEOC complaint may be stretched. "The claims are not alike or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994). The Seventh Circuit explained this policy in *Rush*:

> An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination. This limitation is consistent with the principle of primary jurisdiction in the agency, for its gives the employer some warning of the conduct about which the employee is aggrieved, and it

> affords the agency and the employer an opportunity to attempt conciliation without resort to the courts.

*Rush*, 966 F.2d at 1110.

It is not clear from Plaintiff's briefs exactly how she plans to use the post-termination applications in her case. She claims that it is "ongoing retaliatory treatment." (Pl.'s Surreply 3.) However, since only seventeen of her job applications were submitted after her EEOC complaint, it is not clear for what the other twenty-four denials were in retaliation. Further, it is clear that retaliation was not an element of her EEOC complaint. Despite what Plaintiff claims in her surreply, her EEOC charge would in no way put St. Mary's on notice that it was being accused of ongoing retaliatory treatment. To the extent that Plaintiff contends that each application was a separate act of discrimination then it was not the same conduct being alleged in the EEOC charge. Therefore, the post-termination applications are not actionable for the Title VII claim.[12]

Plaintiff would also like to introduce the conversation with Moll, where Moll allegedly said that the Jewish religion is "stupid." Defendant pointed out in its reply that these actions occurred more than 300 days before the filing of the EEOC complaint meaning that they are not actionable. Plaintiff admits that this is true, but responds that "this fact in itself does not preclude Praigrod from relying upon these events as

---

[12] Plaintiff correctly points out that exhaustion of administrative remedies is not a prerequisite for a FMLA retaliation claim. However, in order to use these post-termination applications, Plaintiff would need to amend her complaint and St. Mary's would get an opportunity to argue that admission at this time would be prejudicial. *See* Fed. R. Civ. P. 15(b). Because that issue is not before the court, the court will just note that discussion of the post-termination applications is outside the scope of the complaint at this time.

evidence of discriminatory *animus* on the part of St. Mary's." (Pl.'s Br. 17.) More accurately, it is evidence of Moll's animus, which is irrelevant because Plaintiff does not claim that any of the adverse decisions were made by Moll. *See Cullen v. Olin Corp.*, 195 F.3d 317, 323 (7th Cir. 1999) ("Of course, 'a statement must relate to the motivation of the decision-maker responsible for the contest decision'" (quoting *Rothman v. Emory Univ.*, 123 F.3d 446, 451 (7th Cir. 1997)). Therefore, the conversation with Moll will not be admissible to show discriminatory intent unless Moll was the decisionmaker on a particular adverse employment decision.

### III.  CONCLUSION

For the reasons set forth above, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's ADA claim must fail because Plaintiff has not shown that she can fulfill the requirements of her job, thus she is not a qualified person under the act. Plaintiff's FMLA claim survives because Defendant made no showing that it is entitled to judgment on Plaintiff's retaliation claim under an indirect method of proof. Plaintiff's Title VII claim survives because Defendant did not attack Plaintiff's prima facie case and could not give a legitimate, non-discriminatory reason for many of the decisions to not give Plaintiff a transfer. Because Plaintiff's FMLA and Title VII claims will be proceeding to trial, no judgment will be issued on the dismissal of the ADA claim.

ALL OF WHICH IS ENTERED this 19th day of January 2007.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Allyson Rebecca Breeden
ZIEMER STAYMAN WEITZEL & SHOULDERS
abreeden@zsws.com

Philip J. Gibbons Jr.
HASKIN LAUTER LARUE & GIBBONS
pgibbons@hllglaw.com

Andrew G. Jones
HASKIN LAUTER LARUE & GIBBONS
ajones@hlllaw.com

Wm Michael Schiff
ZIEMER STAYMAN WEITZEL & SHOULDERS
MSchiff@zsws.com